**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 13 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

v.

No. 96-2174

JAMES BAHE, SR.,

Defendant-Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. CR-95-421-MV)

Kathleen Bliss, Special Assistant United States Attorney (John J. Kelly, United States Attorney, with her on the brief), Albuquerque, New Mexico, for Plaintiff-Appellant.

John V. Butcher, Assistant Federal Public Defender, Albuquerque, New Mexico, for Defendant-Appellee.

Before HENRY, LOGAN, and BRISCOE, Circuit Judges.

LOGAN, Circuit Judge.

The government's appeal of a pretrial order in this child sexual abuse case raises difficult problems involving the marital communications privilege. The district court granted a defense motion to prevent defendant's wife from testifying about a physical act by her husband which signifies his interest in initiating sexual intercourse. We resolve the appeal by adopting an exception to the privilege for crimes committed against a minor relative in the defendant's household. Thus we reverse the district court's order.

I

Defendant James Bahe, Sr., an Indian, was indicted on a charge of violating 18 U.S.C. §§ 2241(c) and 2245(2)(c) by sexually abusing an eleven-year-old female relative in his home on the Navajo Indian Reservation. Defendant allegedly penetrated the child's vagina with his hand and finger. Before trial the government notified defendant that it intended to offer the following testimony from his wife:

> Sometimes when [his wife] is asleep her husband tries to initiate sex by . . . inserting his fingers inside her vagina. He subsequently bends his finger makes a hook and pulls it out forcefully, roughly, and it hurts. That is precisely the act described by the 11-year-old girl [the alleged victim of the crime charged]. . . .
>
> . . . We are putting her on the stand simply to describe this one peculiar sexual act to lend credibility to a child's testimony. It's near in time. It's repeated. It's identical or at least closely similar to what the child has described and experienced.

II R. 61-62, 64-65. This was offered as Fed. R. Evid. 404(b) evidence to show intent and knowledge, absence of mistake, identity, and *modus operandi*.

Defendant sought to exclude the evidence as a confidential communication protected by the marital privilege, characterizing the described physical act as his way of informing his wife that he would like to initiate sex.  Finding this to be a communication, and noting that marital communications are presumed to be confidential, the district court ruled that the wife's testimony could not be introduced over the objection of her husband.  On appeal, the government asserts a sexual act is not a confidential marital communication.  Even if it is, the government argues it should not have been applied here because (1) the wife was asleep at the time and thus the act could not have been intended as communication; (2) defendant waived the privilege by performing the act on a third party victim; (3) defendant did not show that the act was consensual and if it was not consensual it was a crime and thus not privileged; and (4) we should carve out an exception to the privilege for child abuse cases, on policy grounds.

Although the admission or exclusion of evidence is generally left to the sound discretion of the court, see Towerridge Inc. v. T.A.O., Inc., 111 F.3d. 758, 769 (10th Cir. 1997), all of the arguments made by the government raise legal questions that we review de novo.

II

We are concerned at the threshold with whether we have jurisdiction.  The marital privilege as recognized in the federal courts has two aspects:  the testimonial privilege which permits one spouse to decline to testify against the other during the marriage, and

- 3 -

the marital communications privilege which either spouse may assert to prevent the other from testifying to confidential communications made during the marriage. See generally Trammel v. United States, 445 U.S. 40 (1980). It is clear that defendant's wife cannot be compelled to give evidence against her husband in this criminal case. See id. at 53. The question is whether defendant can prevent her from testifying against him if she chooses to do so.

We are concerned with the ripeness in this appeal because defendant's brief states that his "counsel has conferred with Mrs. Bahe, and she still intends to invoke the adverse spousal testimonial privilege." Appellee's Answer Brief at 3-4 n.2. Also, in proceedings before the district court defense counsel stated "[b]oth the government and I agree that the proper time to [see if Mrs. Bahe wants to invoke her right not to be a witness against her husband] would be just before opening statements, because Mrs. Bahe would have the right to change her mind between now and then." II R. 3. If Mrs. Bahe does not intend to testify against her husband this court is being asked to decide a question that may never come up in the trial.

In spite of defense counsel's statements the government has continuously asserted to the court that Mrs. Bahe's cooperation with the government has been voluntary and that she will testify against her husband if allowed to do so. Further, the United States may not appeal from a decision of the district court excluding evidence "after the defendant has been put in jeopardy." 18 U.S.C. § 3731. Thus, if the government must

- 4 -

wait until "just before opening statements" jeopardy would have attached and no appeal would be permitted. Although this exact situation appears to be one of first impression at the appellate level, it is analogous to "conditional" rulings which have been held to be appealable under § 3731. See, e.g., United States v. Parks, 100 F.3d 1300, 1304 (7th Cir. 1996) (tapes ordered suppressed until government transcribes them in their entirety); United States v. Horwitz, 622 F.2d 1101, 1104 (2d Cir. 1980) (testimony of government's immunized witness suppressed unless two defense witnesses are also immunized). In the absence of an affidavit of the wife that she will not testify, we hold that we must accept the representation of the government that the wife is ready, willing, and intends to testify against her husband. Therefore, we have a controversy ripe for decision despite the possibility that Mrs. Bahe may decide not to testify.

III

We have no difficulty rejecting the government's contentions based on the fact the wife might have been asleep, that the act was nonconsensual, and defendant's alleged waiver of the privilege. Mrs. Bahe's testimony, according to the government's representation, would be that the husband initiates the act of digital penetration of her vagina when he wants sex. Assuming the privilege requires defendant to show he intended to communicate, that she sometimes is asleep when this occurs would not affect the husband's intent that it be a communication, any more than if he shouted at her to

wake up because he wanted sex. Obviously at some point she was awake or she would have no knowledge of the incidents to which she could testify.

The government did not raise the argument of Mrs. Bahe's consent to her husband's acts in district court proceedings, and thus we do not consider it here. See Lyons v. Jefferson Bank & Trust, 994 F.2d 716, 721 (10th Cir. 1993). In the district court, the government summarized Mrs. Bahe's anticipated testimony and argued that the conduct was not communicative. It did indicate she would describe her husband's conduct as forceful, rough and painful, but never stated that it was not consensual or that his conduct constituted an offense against her.

Finally, a waiver requires an intentional disclosure of the content of the confidential communication by the party seeking to invoke the privilege. See 2 Stone and Taylor, Testimonial Privileges § 5.12 at 5-28 to 5-30 (2d ed. 1993). Defendant could waive the privilege by telling others how he initiates sex with his wife, but there is no evidence here that defendant disclosed this information to any third party, or that a third party was present at any time he performed this act on his wife. That he may have said the same words to, or performed the same physical act on, a third person does not waive the privilege. Cf. In re Grand Jury Investigation, 603 F.2d 786, 788 (9th Cir. 1979) (testimonial privilege).

The more difficult questions raised by the appeal are whether all consensual sexual behavior within a marriage is subject to the marital communications privilege; if not,

- 6 -

whether the physical and communicative aspects of the husband's act can be separated to permit the introduction of the evidence; and if not, whether we should create an exception to permit the testimony in a case like that before us.

IV

We next address the extent to which the marital communications privilege extends beyond words spoken between a husband and wife. In Pereira v. United States, 347 U.S. 1, 6 (1954), the Supreme Court observed that the marital communications privilege, "generally, extends only to utterances, and not to acts." However, the scholar whom the Supreme Court cited for that general proposition and many decisions of lower federal courts recognize that some acts are communicative and thus are protected by the marital communications privilege. See 8 Wigmore, Evidence § 2337[1] (McNaughton rev. 1961); 25 Charles Alan Wright and Kenneth W. Graham, Jr., Federal Practice and Procedure § 5577 (1989 and 1997 Supp.) (discussing cases concluding that acts may be protected by the privilege). Thus, "the majority rule among state and federal courts holds that all acts intended to convey a message are privileged." Developments in the Law-Privileged

---

[1] In the section of his treatise cited by the Supreme Court in Pereira, Wigmore states that the marital communications privilege "extends only to communications, not to acts which are in no way communications." Wigmore § 2237 at 657 (second emphasis added). The Wigmore treatise proceeds to give an example of a communicative act that is "properly within the privilege" because it is "clearly intended to be [a] confidential communication[]." Id. It describes as falling within the privilege "the conduct of a husband who brings home a package of valuables and, calling his wife's attention says 'Note where I put this package' as he places it in the fourth desk drawer. He communicates with her not only the words but also the act of placing the package." Id.

Communications, 98 Harv. L. Rev. 1563, 1572 (1985); see, e.g., United States v. Estes, 793 F.2d 465, 467(2d Cir. 1986) (observing that acts intended to convey a confidential message are protected by the privilege); United States v. Robinson, 763 F.2d 778, 783 (6th Cir. 1985) (same); United States v. Ferris, 719 F.2d 1405, 1408 (9th Cir. 1983) (same); United States v. Smith, 533 F.2d 1077, 1079 (8th Cir. 1976) (same); United States v. Lewis, 433 F.2d 1149, 1150 (D.C. Cir. 1970) (same); see also 2 Stone & Taylor § 5.10 at 5-18 (stating that the implication of Pereira is that communicative acts may be covered by the privilege, citing several federal decisions suggesting that communicative acts are covered, but concluding that the federal law "is not well settled"); cf. Texas v. Johnson, 491 U.S. 397, 406 (1990) (flag burning constitutes communicative conduct implicating the First Amendment).

We too have assumed that the marital privilege extends to "physical acts that are entirely communicative, such as sign language." United States v. Neal, 743 F.2d 1441, 1448 (10th Cir. 1984) (Logan, J., concurring). According to Wright and Graham, "[i]f oral or written expression is the core of the concept of a 'communication' for purposes of the marital privilege, the first extension of that concept would include what might be called '801(a)(2) statements'"--"'non-verbal conduct of a person, if it is intended . . . as an assertion.'" 25 Wright & Graham § 5577 at 637 (quoting Fed. R. Evid. 801(a)(2)). These statements clearly fall within any reasonable definition of communication.

If the wife were to testify that defendant performed this particular physical act when he wanted to initiate sexual intercourse, this would support his argument that the act was intended to carry a message. The fact that the act was painful for the wife does not negate the communicative aspect.

At oral argument the government stated it had no interest in the meaning of the act as understood between defendant and his wife, but only in the fact the act occurred. Thus it attempts to separate the physical act from the message the physical act was intended to convey. This could be done if we view the message narrowly--to "I want sex"--and prevent the wife from testifying about the message. She could testify simply that sometimes her husband performs that same physical act on her. That presumably would satisfy the government.

The district court, however, took the broader view that physical touching between spouses, especially involving sexual activity, is communication within the marital privilege. In reaching its conclusion the district court stated:

> Physical touching such as a hug, a pat on the back, a holding of the hand, can and do[es] constitute [an] act[] communicating affection, reassurance, and so on. Physical touching involving sexual activity between consenting spouses can and does communicate perhaps the deepest feelings that each has for the other and should be protected from exposure in a public forum such as a court of law.
>
> Such communicative acts, done in private, are presumptively confidential and therefore fall within the marital privilege.

I R. doc. 41 at 10-11. The district court relied on White v. Georgia, 440 S.E. 2d 68, 70 (Ga. App. 1994), which held that the testimony of the defendant's wife that the two of them had regularly engaged in consensual anal sodomy was protected by the marital communications privilege under Georgia law.[2] As general support for its broad view of the privilege it cited Griswold v. Connecticut, 381 U.S. 479 (1965), which established the right of privacy in the context of marriage. It acknowledged that Griswold was not controlling, but said it "and like cases provide a strong rationale for the existence of the spousal privileges by acknowledging the special nature of marriage and providing for its protection from undue intrusion and disruption." I R. doc. 41 at 6 n.2.

We have found only one circuit opinion directly addressing whether under federal common law all sex acts between marriage partners are communication within the privilege. In Garcia-Jaramillo v. INS, 604 F.2d 1236 (9th Cir. 1979), the court concluded that a woman's testimony in a deportation proceeding about her ex-husband's sexual behavior during their marriage was not privileged. In reaching this conclusion, the court said only that "testimony concerning the existence or lack of sexual relations between former spouses is [not] privileged after divorce." 604 F.2d at 1238; cf. Laroche v. Wainwright, 599 F.2d 722, 726 (5th Cir. 1979) (finding no prejudice where Florida trial

---

[2] "Subject to certain limited exceptions, the general rule in Georgia is that a privilege inures to the communicator for all communications made to a spouse for all consensual marital acts of a personal nature involving married persons, where the communication or act results from a reliance upon the confidential relationship of husband and wife." White v. Georgia, 440 S.E.2d 68, 70 (Ga. App. 1994).

court rejected defendant's claim that his wife's incriminating rebuttal testimony that they had sexual intercourse on day of rape was protected by the marital communications privilege without any discussion of whether there was a privileged communication); Constancio v. State, 639 P.2d 547, 549 (Nev. 1982) (testimony of defendant's ex-wife that he had had difficulty sustaining an erection not protected by statutory communications privilege; reasoning that testimony did not concern a "communication," e.g., conveying "a meaning or message"). But see Griffith v. Griffith, 44 N.E. 820, 822 (Ill. 1896) (court found testimony of an ex-wife regarding her former husband's sexual practices improperly admitted).

We believe the accepted norm in this country is that intimate sex acts between marriage partners are communication and an important expression of love. Nearly all religions urge abstinence until marriage, and many laws condemn adultery and fornication. See City of Sherman v. Henry, 928 S.W.2d 464, 470 n.3 (Tex. 1996) ("Twenty-five states and the District of Columbia still provide criminal penalties for adultery."), cert. denied, 117 S. Ct. 1098 (1997). If we limit the marital communications privilege as narrowly as the government seeks in the instant case, a spouse could testify to every aspect of the marital sexual relationship. There is something inherently offensive in that idea.

We do not decide in this case whether testimony about physical acts involving sex between marriage partners are generally within or without the marital communications

privilege.  Instead, we approve an exception to the privilege that would permit the wife's testimony--assuming it satisfies Fed. R. Evid. 403 and 404(b) criteria--in the situation before us.

V

The issue of a public policy exception to the marital communication privilege was not raised in the district court.  The government insisted the act was not communication; defendant argued, and the district court accepted, that all consensual sexual touching between marriage partners is within the privilege.  The public policy exception issue was raised, fully briefed and argued on appeal.  Whether we resolve an issue raised for the first time on appeal is one within our discretion.  Anixter v. Home-Stake Prod. Co., 77 F.3d 1215, 1229 (10th Cir. 1996).  On this issue the Supreme Court has said,

> The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases.  We announce no general rule.  Certainly there are circumstances in which a federal appellate court is justified in resolving an issue not passed on below, as where the proper resolution is beyond any doubt, or where injustice might otherwise result.

Singleton v. Wulff, 428 U.S. 106, 121 (1976) (citations and quotation omitted).  We believe this is a case in which we should exercise that discretion.

The Federal Rules of Evidence state specifically that except as mandated by the Constitution or a statute,  "the privilege of a . . . person . . . shall be governed by the principles of the common law as they may be interpreted by the courts of the United

States in the light of reason and experience." Fed. R. Evid. 501. Trammel noted the intention of Congress "not to freeze the law of privilege" and to give the courts flexibility to make changes on a case by case basis. 445 U.S. at 47. Federal courts have created an exception to the privilege in instances in which a spouse commits an offense against another spouse. See Wyatt v. United States, 362 U.S. 525, 526-27 (1960) (applying exception); United States v. White, 974 F.2d 1135, 1137 (9th Cir. 1992) (same); United States v. Allery, 526 F.2d 1362, 1365 (8th Cir. 1977) (exception applied to "anti-marital facts privilege"); 25 Wright & Graham § 5592 at 798 ("The classic case for invocation of the exception is wife-beating; it is generally agreed that an assault, battery, or other form of corporal violence is within the exception.") (footnotes omitted). Two federal circuit court decisions have adopted an exception to the testimonial or marital communications privilege when the victim of the alleged offense is a child of one of the spouses. See Allery, 526 F.2d 1362 (testimonial privilege); White, 974 F.2d 1135. See 25 Wright & Graham § 5593 at 759-60 (discussing exception and stating that "it was not until quite recently that federal courts took this step").

In Allery, the Eighth Circuit held that the testimonial privilege did not preclude the testimony of the defendant's wife concerning his actions on the evening he attempted to rape his daughter and his previous sexual abuse of their children. 526 F.2d at 1367. In White, the Ninth Circuit held that the marital communications privilege did not protect the testimony of the wife of a defendant accused of murdering his stepdaughter. 974 F.2d

- 13 -

at 1137-38.  The defendant's wife had testified at trial that he had previously threatened to kill both her and the stepdaughter.  Id.

We acknowledge that Allery and White are not identical to the instant case.  The claim of privilege in Allery involved acts not claimed to be confidential communications; and although White involved confidential communications, the statements (death threats) sought to be protected by the privilege were themselves offenses against the defendant's wife and stepdaughter.  Further, unlike the instant case, the defendants in both Allery and White were charged with an offense against the child of one of the spouses.

Some states have established a broad exception to the privilege when one spouse is accused of abusing any child.  See, e.g., Ludwig v. State, 931 S.W.2d 239, 244 (Tex. Crim. App. 1996) (en banc) (interpreting state evidentiary rule to establish exception to marital communications privilege in any crime against any minor child).  Other states have adopted a narrower exception, applicable only to crimes against children of either spouse.  See, e.g., People v. Fisher, 503 N.W.2d 50, 53 (Mich. 1993) (discussing state evidentiary rule establishing exception); see also Johnson v. United States, 616 A.2d 1216, 1219-25 (D.C. App. 1992) (establishing exception for crimes against children of either spouse under the common law).

We see no significant difference, as a policy matter, between a crime against a child of the married couple, against a stepchild living in the home or, as here, against an eleven-year-old relative visiting in the home.  Child abuse is a horrendous crime.  It

generally occurs in the home, see Allery, 526 F.2d at 1366, and is often covered up by the innocence of small children and by threats against disclosure.  It would be unconscionable to permit a privilege grounded on promoting communications of trust and love between marriage partners to prevent a properly outraged spouse with knowledge from testifying against the perpetrator of such a crime.

Exercising the "reason and experience" granted to us by Fed. R. Evid. 501 we recognize an exception to the marital communications privilege for spousal testimony relating to the abuse of a minor child within the household.  Thus, we REVERSE the judgment of the district court on this pretrial ruling.