**UNITED STATES**

v.

**Technical Sergeant Jason K. SLAPE,
United States Air Force**

**ACM 38801**

U.S. Air Force Court of Criminal Appeals.

Sentence adjudged 6 January 2015 by GCM convened at Mountain Home Air Force Base, Idaho.

8 December 2016

Appellate Counsel for Appellant: Frank J. Spinner, Esquire (argued) and Major Lauren Ann L. Shure.

Appellate Counsel for the United States: Major G. Matt Osborn (argued); Colonel Laura J. Megan–Posch; Captain Tyler B. Musselman and Gerald R. Bruce, Esquire.

Before MAYBERRY, DUBRISKE, J. BROWN, Appellate Military Judges

PUBLISHED OPINION OF THE COURT

MAYBERRY, Senior Judge:

Contrary to his pleas at a general court-martial, Appellant was found guilty by a military judge sitting alone of two specifications of abusive sexual contact by committing lewd acts upon a child under the age of 16, in violation of Article 120b, UCMJ, 10 U.S.C. § 920b. Specifically, the military judge found that on divers occasions between on or about 1 October 2012 and on or about 5 August 2013, Appellant intentionally touched the victim's groin directly and her buttocks and breasts through her clothing, all with an intent to gratify his sexual desire. The military judge found Appellant not guilty of committing a lewd act upon the same victim on divers occasions by intentionally causing her to touch his genitalia in violation of Article 120b, UCMJ. The military judge sentenced Appellant to a dishonorable discharge, confinement for 30 months, and reduction to E–3. The convening authority approved the adjudged sentence.

On appeal, Appellant raises two issues: (1) the military judge abused his discretion in construing and applying Military Rule of Evidence (Mil. R. Evid.) 504 when he ruled Appellant's wife could not refuse to testify against Appellant; and (2) the evidence was legally and factually insufficient to sustain Appellant's conviction for abusive sexual contact of a child. Although we disagree that the military judge abused his discretion as to the proper application of Mil. R. Evid. 504, we agree that the portion of the abusive sexual contact of a child specification alleging Appellant touched NS's buttocks with the intent to gratify his sexual desire was factually insufficient. We affirm the modified findings and sentence.

*Background*

Sometime between 2011 and 2012, Appellant's wife met and became friends with Mrs. JM. The two women gathered their families together for game nights, barbecues, pool parties, and other social activities. Appellant's daughter became close friends with

Mrs. JM's daughter, NS, the victim in this case. In November of 2012, NS and her family moved in with Appellant's family for a period of approximately three weeks. In late November 2012, NS and her family moved from Appellant's residence to a farm about 15 minutes outside of Mountain Home, Idaho. The friendship and social interactions between the two families continued through early August of 2013. During the schoolyear, NS went to Appellant's residence for sleepovers approximately every other weekend. During the summer of 2013, the sleepovers occurred almost weekly, often lasting multiple days.

When NS was at Appellant's residence, NS's mother did not have much communication with her daughter or Appellant's family. Mrs. JM testified that "[the Slapes] were responsible for knowing where [NS] was if she left the house, they were responsible for feeding her, they were responsible to notify me if there was a medical emergency...." Mrs. JM also testified that [Appellant's wife] "had authority to discipline NS and had done so in my home." NS viewed Appellant as "technically our guardian." NS was on probation with local authorities from February 2013 through February 2014. This included restrictions prohibiting her from being around others on probation, and imposing a curfew during the summer. Mrs. JM and Appellant's wife coordinated on how to ensure NS complied with the terms of her probation when NS was at the Slape home. On one occasion, Appellant's wife called to see if it was okay for NS to go to the pool because of her curfew restrictions.

All of the alleged incidents took place in Appellant's home, but involved two different locations due to Appellant moving during the charged timeframe. The three specifications involved two incidents alleging Appellant touched NS's breasts and buttocks over her clothes, two incidents alleging Appellant put his hand down NS's pants inside her underwear and touched her groin, and two incidents alleging Appellant placed NS's hand on his penis.

Additional facts necessary to resolve Appellant's assignments of error are provided below.

*Application of Mil. R. Evid. 504*

█ During pretrial litigation, trial defense counsel filed a motion in limine to prevent trial counsel from calling Appellant's spouse as a witness at trial, citing Mil. R. Evid. 504(a) and the spousal incapacity privilege. The Government maintained that the spousal incapacity privilege in Mil. R. Evid. 504(a) did not apply to a case involving a crime against a child entrusted to the care of the Appellant or his spouse, no matter how short the duration of that temporary physical custody. The military judge held the spousal incapacity privilege did not apply based on the amended and expanded definition of the "child of either" exception set forth in Mil. R. Evid. 504(d).

Appellant asserts the military judge abused his discretion in construing and applying Mil. R. Evid. 504 when he ruled that Appellant's wife could not refuse to testify against Appellant. The issue presented here is whether, under the facts of this case, Appellant or his wife had "temporary physical custody" of NS. If either Appellant or his wife had temporary physical custody of NS, based on the current definition in the rule, the spousal incapacity privilege would not apply and Appellant's wife could not refuse to testify against her husband.

█ We review a military judge's decision to admit or exclude evidence for an abuse of discretion. *United States v. Thompson*, 63 M.J. 228, 230 (C.A.A.F. 2006); *United States v. McCollum*, 58 M.J. 323, 335 (C.A.A.F. 2003) (citing *United States v. McElhaney*, 54 M.J. 120, 131–32 (C.A.A.F. 2000)). Whether a marital privilege applies to exclude evidence from consideration by the factfinder is a mixed question of law and fact. *McCollum*, 58 M.J. at 335 (citing *United States v. Napoleon*, 46 M.J. 279, 284 (C.A.A.F. 1997)). We affirm a military judge's findings of fact unless the findings are clearly erroneous, and we review conclusions of law de novo. *United States v. Rader*, 65 M.J. 30, 32 (C.A.A.F. 2007). There is an abuse of discretion when: (1) findings are clearly erroneous; (2) an erroneous view of the law guides a decision; or (3) the decision is not one of the possible outcomes arising from the

facts and law of the case *sub judice*. *United States v. Freeman*, 65 M.J. 451, 453 (C.A.A.F. 2008).

Under Mil. R. Evid. 504(a), a person has a privilege to refuse to testify against his or her spouse unless one of the exceptions to the privilege—enumerated in Mil. R. Evid. 504(c)—apply. In accordance with the exception under Mil. R. Evid. 504(c)(2)(A), the spousal incapacity privilege does not apply "[i]n proceedings in which one spouse is charged with a crime against . . . *a child of either* . . . ." (Emphasis added).

In *McCollum*, our superior court interpreted "a child of either," based on the law in place at the time, as not encompassing a de facto child exception. 58 M.J. at 340. Consequently, our superior court was constrained to find that an appellant's admission to his wife that he had sex with his wife's mentally retarded 14-year-old sister who was living with them did not fall within an exception and was privileged. In so holding, the court recognized there were public policy arguments in favor of not preventing " 'a properly outraged spouse with knowledge from testifying against a perpetrator' of child abuse within the home, regardless of whether the child is part of the family." *Id.* at 342 n.6 (quoting *United States v. Bahe*, 128 F.3d 1440, 1446 (10th Cir. 1997)). However, the court noted policy questions are best addressed by the legislative and executive branches of government. *Id.* at 342.

Following the decision in *McCollum*, Mil. R. Evid. 504 was amended in 2007 to more broadly define a "child of either" to include, among other categories, ". . . a child who is under the permanent or temporary physical custody of one of the spouses, regardless of the existence of a legal parent-child relationship." Mil. R. Evid. 504(d)(1). A "child" is defined as "an individual under the age of 18." Mil. R. Evid. 504(d)(1)(A). "Temporary physical custody" exists when "a parent has entrusted his or her child with another. There is no minimum amount of time necessary to establish temporary physical custody, nor is a written agreement required. Rather, the focus is on the parent's agreement with another for assuming parental responsibility for the child." Mil. R. Evid. 504(d)(2). This definition significantly expanded the "child of either" exception to the marital privilege.

The spousal incapacity privilege under Mil. R. Evid. 504(a) is not absolute. Under the current law, there is no spousal incapacity privilege in proceedings in which one spouse is charged with a crime against a child who is under the temporary or permanent physical custody of the other spouse, regardless of the existence of a legal parent-child relationship.

How to define and apply "temporary physical custody" in Mil. R. Evid. 504 is an issue of first impression in our court. The military judge found that the exception in Mil. R. Evid. 504(c)(2)(A), as amended by Mil. R. Evid. 504(d), is designed to recognize the public policy of protecting children such as NS in circumstances such as those present in this case. In his four-page written ruling, the military judge found there was an agreement between the Slapes and NS's parents and "[t]hese responsibilities were not put in writing but were based upon a mutual understanding between [Mrs. JM and her family] and the Slapes. Mrs. JM assumed that the Slapes would take care of NS when she stayed with them."

The military judge then made the following conclusions of law:

> The court finds that [Appellant's spouse] is currently the lawful spouse of [Appellant] and that she has indicated her desire not to testify against the [Appellant] in this case in accordance with MRE 504(a).

> Although NS is not a biological child, or adopted child, or ward of either [Appellant's spouse] or [Appellant], the court finds, based on the evidence presented, that the parents of NS entrusted NS to the care of [Appellant's spouse] and [Appellant] on multiple occasions for overnight visits between November 2012 and August 2013. The court finds that when NS spent the night with the Slapes on various occasions, sometimes for a single night, and other times for multiple nights, that the Slapes assumed, with the spoken and unspoken understanding of NS'[s] parents, certain basic parental responsibilities for the care, wellbeing and supervision of NS, who is a minor. While staying with the

Slapes, NS was subject to the rules of the Slape household and the Slapes were authorized to discipline her for violations of those rules. When NS stayed with the Slapes, NS maintained minimal contact with her actual mother and, instead, had to seek permission from the Slapes to do things such as leave the Slapes' home. The Slapes were also responsible for ensuring that NS was accounted for, fed, and that she did not violate the terms of her probation. And although there was no formal or written agreement between the Slapes and [NS's parents], the court finds that the [Slapes] exercised basic parental responsibility for NS when she stayed with them. Because the court concludes that NS was, on multiple occasions during the charged timeframe, under temporary physical custody of [Appellant's spouse] and [Appellant], the court finds by a preponderance of the evidence that the exception set forth in MRE 504(c)(2)(A) is designed to recognize the public policy of protecting children such as NS in circumstances such as those present in this case.

The military judge's findings of fact are not clearly erroneous and are supported by the evidence. The military judge's findings reveal that NS and her family had a strong, ongoing relationship with the Slapes. NS and her family had previously lived with the Slapes, and when NS was at the Slape household, NS's parents expected and understood that the Slapes would discipline and care for her. As such, the military judge correctly found that the Slapes assumed—with spoken or unspoken agreement and the understanding of NS's parents—that they would cover certain basic parental responsibilities for the care, well-being, and supervision of NS, who is a child and a minor under Mil. R. Evid. 504. The evidence established that NS was entrusted to the home of Appellant and his wife for recurring overnight care between October 2012 and August 2013, and that both NS's mother and Appellant's wife shared this mutual understanding and agreement. Appellant committed crimes against NS during visits when NS was in the temporary physical custody of the Slapes. Considering all of these facts, the spousal incapacity privilege does not apply. The military judge did not

abuse his discretion in precluding Appellant's spouse from invoking the spousal incapacity privilege. His ruling is supported by the facts and correct under the law.

In his brief, and during oral argument before this court, Appellant argues we should narrowly construe Mil. R. Evid. 504 and prohibit the application of the exception when the purpose of the temporary custody is purely social in nature. To do otherwise, Appellant argues, would allow the exception to apply any time a child is present in another home. In arguing a narrow application of the marital privilege, Appellant relies on *United States v. Banks*, 556 F.3d 967 (9th Cir. 2009). There, the Ninth Circuit held that evidence was improperly admitted when a spouse was allowed to testify against her husband regarding his statements to her about the production and distribution of child pornography involving their toddler grandson. Although these grandparents did not have legal custody of their grandson, they regularly babysat him for prolonged periods of time. The Ninth Circuit held that the federal district court erred in applying the marital communications privilege, but the error was harmless. The facts and analysis of that case are not persuasive here, however, because there the Ninth Circuit interpreted the common law approach to marital communications and privileges. In sharp contrast, the Military Rules of Evidence explicitly set forth the scope and limitations of the military's spousal privilege.

We need not address the specific situation raised as a concern by Appellant given the individual facts of his case. However, in evaluating whether this exception applies in factual situations different from those found here, we recognize that the language of the rule itself does not require a written agreement, or a minimum amount of time necessary to establish temporary physical custody. The focus is on the parent's agreement with another for assuming parental responsibility. The following illustrative but non-exclusive factors may be considered in the future when determining whether a child is under the temporary physical custody of another as set out in Mil. R. Evid. 504:

(1) Any communications or correspondence evidencing an agreement between the parent(s) or legal guardian(s) and another, including discussions between the parent(s) or legal guardian(s) and the non-parent(s) regarding the care or supervision of the child when in the presence of the non-parent(s);

(2) Involvement of the parent(s) or legal guardian(s) and the non-parent(s) in arranging for the child to be in the presence of the non-parent(s);

(3) Age and maturity of the child;

(4) Length of time the child is under the care or supervision of the non-parent(s);

(5) Frequency that the child is under the care or supervision of the non-parent(s);

(6) Availability of the parent(s) or legal guardian(s) when the child is under the care or supervision of the non-parent(s)

(7) Ability of the non-parent(s) to discipline or impose household rules on the child;

(8) Purpose for the arrangement;

(9) Handling of medical care/emergencies; and

(10) Knowledge by non-parent(s) of specific needs or requirements of the child.

*Legal and Factual Sufficiency*

█ In his second assignment of error, Appellant argues the evidence produced at trial was factually and legally insufficient to support his conviction for sexual abuse of a child. Appellant alleges the prosecution failed to prove beyond a reasonable doubt that he engaged in sexual abuse of NS. Appellant focuses on NS's potential motives to lie and attention-seeking behavior, as well as NS's inconsistent statements and lack of memory as being insufficient to prove guilt beyond a reasonable doubt.

█ We review issues of factual and legal sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002); *see United States v. Cole*, 31 M.J. 270, 271 (C.M.A. 1990). Our assessment of legal and factual sufficiency is limited to the evidence presented at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993).

█ The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [Appellant]'s guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987); *see United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

█ The test for legal sufficiency is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *Turner*, 25 M.J. at 324; *see also United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002). The term reasonable doubt does not mean that the evidence must be free from conflict. *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001).

To sustain a conviction for sexual abuse of a child, the prosecution must prove that there was a lewd act, which can be "any sexual contact with a child." *Manual for Courts–Martial, United States (MCM )*, pt. IV, ¶ 45b.a.(h)(5)(A) (2012 ed.). Sexual contact consists of touching, or causing another person to touch, either directly or through the clothing, the genitalia, anus, groin, breast, inner thigh, or buttocks of any person, with an intent to abuse, humiliate, or degrade any person. *MCM*, pt. IV, ¶ 45.-a.(g)(2)(A).

On direct examination, NS testified that in early November 2012, when NS and her family temporarily lived in the Slape home and at a time when Appellant was seemingly the only adult home with NS, Appellant touched

NS inappropriately. She described the two of them "wrestling" at which point he grabbed her breast "in a repeated motion" (later defined as squeezing and releasing), slid his hand inside her pants and underwear placing it on her vaginal area, and made her touch his penis. Appellant stopped touching NS when the dog started barking and he thought someone was home. The only other event that happened while she and her family lived in the Slape home occurred when NS helped Appellant wash dishes. After finishing the dishes, as she went to return to her room, Appellant "smacked" her buttocks and told her good night.

She further testified that during one of the sleepovers at Appellant's residence after NS and her family moved to their new home, Appellant locked NS into the closet until his daughter, ZS, finished her chores. A short time later, Appellant returned to let NS out of the closet, but prohibited her from leaving the room. Appellant then grabbed NS's breast in a repeated motion, and pulled her hand behind her and made her grab what she believed was his penis. Appellant pushed NS onto the bed but eventually let NS out of the room when he heard ZS stop vacuuming.

The following day, Appellant "slapped" NS's buttocks as she was entering the kitchen. Appellant's wife, AS, observed this and said, "Really, Jason, smacking her ass." After Appellant left for work, AS called NS outside and confronted her about the incident, asking her, "Is there something going on between you and my husband, and you better not lie to me little girl?" NS answered that Appellant had been touching her inappropriately. Appellant's wife then shared this information with NS's mother. Later, after NS returned home, her mother and stepfather questioned NS themselves, and then contacted law enforcement.

NS offered a number of reasons why she did not tell anyone what Appellant was doing: she was afraid of Appellant; as incidents continued to occur, she did not want to tell because she did not want to hurt her good friend ZS; as to why she did not tell ZS, she said, "I felt this would ruin her." NS elaborated on her fear, stating that "... even though stuff was going on I wanted to make it seem normal because I was afraid of him. He had guns; he liked his guns; he talked about wanting to use his handgun on people. I was afraid of him and so I chose not to say anything." NS testified that Appellant "talked about wanting to shoot people with his handgun all the time—he can't wait to use it."

Trial defense counsel vigorously cross-examined NS on the inconsistencies between her testimony and her prior statements. These inconsistencies included relatively minor facts as to whether she went to the kitchen to turn off a light or to get a drink as well as significant differences, to include the fact that both her Children At Risk Evaluation Services (CARES) videotaped testimony and her Mountain Home Police Department (MHPD) statement included allegations that Appellant digitally penetrated her and kissed her cheeks and mouth during the "dishes" incident, and digitally penetrated her during the "closet" incident. Furthermore, she did not recall telling MHPD that Appellant bit her nipple and left a bruise, but did recall discovering a bruise while in the shower. Additionally, she did not recall telling both MHPD and CARES that during the first incident she was pinned on the floor initially, with Appellant holding her hands above her head. Ultimately, all three prior statements of NS (MHPD, CARES, and Article 32 summarized testimony) were admitted and considered by the military judge.

After the military judge ruled that Appellant's wife could not refuse to testify, the prosecution called AS as a witness. Her testimony was confusing and at times contradictory. Frequently, AS testified that she could no longer remember facts or events that she had previously discussed with law enforcement and NS's mother. Nevertheless, her testimony contained references to wrestling or roughhousing, buttocks slapping, and playing in the closet. Initially, AS testified that Appellant was never home alone with NS, but then quickly acknowledged that at least once she had left them home alone and immediately returned home. Despite her prior statements to MHPD that Appellant's wrestling and horseplay with NS and ZS bothered her and that she once saw Appel-

lant slap NS on the buttocks, AS testified that she did not recall seeing the slap. At trial, AS indicated that it was "wrestling" not the slap that caused her to confront NS, and that she was concerned about NS's ability to form boundaries with Appellant. Additionally, when she confronted NS, she did not focus on Appellant's behavior, but instead blamed NS for their interactions. Appellant's wife acknowledged that she was a victim of sexual assault and that her experiences color her views on interactions between males and females, causing her to overlay sexual overtones to innocent behavior. She also acknowledged that she had told her therapist that she was jealous of the attention Appellant gave NS.

The Defense called Appellant's daughter, ZS, as a witness. Her testimony provided corroboration of the general relationship between her and NS, the interaction involving wrestling and roughhousing that took place in both homes, and playing in the closet. ZS corroborated that NS was locked in the closet, but testified that she was the one who did it, not Appellant, and she was only out of the room for one or two minutes. Additionally, ZS testified that Appellant playfully smacked her buttocks, despite having provided pretrial statements to both trial and defense counsel that she had not been slapped since she was seven or eight years old. Lastly, ZS testified that she was uneasy regarding how NS interacted with Appellant, not the other way around, and believed that NS would flaunt around more than normal when Appellant was present.

We are convinced beyond a reasonable doubt that Appellant committed lewd acts with NS, a minor, on divers occasions between on or about 1 October 2012 and on or about 5 August 2013 by intentionally touching her groin and touching her breasts through her clothing, both with an intent to gratify his sexual desire.

■ We do not reach the same conclusion regarding the portion of Specification 2 alleging that Appellant touched NS's buttocks with an intent to gratify his sexual desire. We do not find sufficient evidence that these touchings were done with an intent to gratify Appellant's sexual desires. One instance took place in the presence of Appellant's wife and daughter, while Appellant and the two girls were horsing around. He was trying to block them from entering the kitchen. The other instance occurred as NS was heading off to bed after helping Appellant finish the dishes. While one instance caused AS to confront NS, the touching was similar to other "horsing around" or "wrestling" that was a regular activity in both homes. We are not convinced beyond a reasonable doubt that the buttocks touchings constituted "sexual contact" and, therefore, except this language from the specification.

*Sentence Reassessment*

■ Having found Appellant's touching of NS's buttocks not to be abusive sexual contact, we must consider whether we can reassess the sentence or whether this case should be returned for a sentence rehearing. We are confident we can accurately reassess Appellant's sentence.

■ This court has "broad discretion" when reassessing sentences. *United States v. Winckelmann*, 73 M.J. 11, 12 (C.A.A.F. 2013). Our superior court has repeatedly held that if we "can determine to [our] satisfaction that, absent any error, the sentence adjudged would have been of at least a certain severity, then a sentence of that severity or less will be free of the prejudicial effects of error . . . ." *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986). This analysis is based on a totality of the circumstances with the following as illustrative factors: dramatic changes in the penalty landscape and exposure, the forum, whether the remaining offenses capture the gravamen of the criminal conduct, whether significant or aggravating circumstances remain admissible and relevant, and whether the remaining offenses are the type that we as appellate judges have experience and familiarity with to reliably determine what sentence would have been imposed at trial. *Winckelmann*, 73 M.J. at 15–16.

In the present case, excepting out "intentionally touching the buttocks of NS through her clothing" from Specification 2 does not change the maximum penalty. The remaining

offenses—abusive sexual contact on divers occasions involving directly touching NS's groin and touching NS's breasts over her clothes—capture the gravamen of the criminal conduct. Moreover, we believe the evidence surrounding Appellant's touching of NS's buttocks would have still been relevant and admissible when the military judge evaluated the abusive sexual contact specifications. The forum was military judge alone and thus we are "more likely to be certain of what a military judge would have done." *Id.* at 16. This court has experience and familiarity with determining fair and appropriate sentences for this type of offense. We are confident that the military judge would have imposed the same sentence. Having so found, we reassess Appellant's sentence to the same sentence that was approved by the convening authority: a dishonorable discharge, confinement for 30 months, and reduction to E–3.

*Post–Trial Processing Delay*

 Appellant has not raised as supplemental error the presumptive unreasonable delay between the docketing of the case with this court and our opinion. Under *United States v. Moreno*, courts apply a presumption of unreasonable delay when a Court of Criminal Appeals does not render a decision within 18 months of docketing. 63 M.J. 129, 142 (C.A.A.F. 2006).

This case was docketed with this court on 4 May 2015. Appellant filed his assignments of error on 27 April 2016 and the Government filed their Answer on 1 June 2016. Oral argument was held on 25 August 2016. We find Appellant suffered no prejudice from this short delay that would authorize *Moreno* relief.

 Similarly, we decline to grant relief under *United States v. Tardif*, 57 M.J. 219, 223–24 (C.A.A.F. 2002). Under Article 66(c), UCMJ, this court is empowered "to grant relief for excessive post-trial delay without a showing of 'actual prejudice' within the meaning of Article 59(a), if it deems relief appropriate under the circumstances." *Id.* at 224 (quoting *United States v. Collazo*, 53 M.J. 721, 727 (Army Ct. Crim. App. 2000)). In *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006), our superior court held that a service court may grant relief even when the delay was not "most extraordinary." The court held, "The essential inquiry remains appropriateness in light of all circumstances, and no single predicate criteria of 'most extraordinary' should be erected to foreclose application of Article 66(c), UCMJ, consideration or relief." *Id.* This court set out a nonexhaustive list of factors we consider when evaluating the appropriateness of *Tardif* relief in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016).

On the whole, we find the presumptively unreasonable delay does not merit sentencing relief in this case. Furthermore, having considered the totality of the circumstances and the entire record, we find the post-trial delay in this case is not so egregious as to adversely affect the public's perception of fairness and integrity of the military justice system. *See Toohey*, 63 M.J. at 362.

*Conclusion*

The approved findings, as modified, and the sentence, as reassessed, are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings as modified and the sentence, as reassessed, are **AFFIRMED.**