**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

　　Plaintiff - Appellee,

v.

STEVEN DAVID MONTAGUE,

　　Defendant - Appellant.

No. 04-4146
(2:03-CR-100-01-DAK)
(D.Utah)

**ORDER**
Filed August 30, 2005

Before **PORFILIO** and **BRISCOE**, Circuit Judges, and **BROWNING**, District Judge.[*]

Appellee's motion to publish the order and judgment filed July 18, 2005, is

granted.  A copy of the published opinion is attached to this order.

Entered for the Court
PATRICK FISHER, Clerk of Court

by:
　　Deputy Clerk

---

[*]　The Honorable James O. Browning, United States District Judge for the District of New Mexico, sitting by designation.

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 18, 2005**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

STEVEN DAVID MONTAGUE,

      Defendant-Appellant.

No. 04-4146

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 2:03-CR-00100-001 DAK)**

Richard P. Mauro, Salt Lake City, Utah, for the defendant-appellant.

Kevin L. Sundwall, Assistant United States Attorney (Paul M. Warner, United States Attorney, with him on the briefs), District of Utah, Salt Lake City, Utah, for the plaintiff-appellee.

Before **PORFILIO, BRISCOE**, Circuit Judges, and **BROWNING**, District Judge.[*]

**BRISCOE**, Circuit Judge.

---

[*] The Honorable James O. Browning, United States District Judge for the District of New Mexico, sitting by designation.

Defendant Steven David Montague appeals his convictions and sentence for three counts of possessing a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). Montague contends the district court violated his Sixth Amendment right to confront witnesses by admitting at trial the grand jury testimony of his wife, Deanne Montague (Deanne). Montague also argues the district court erred by enhancing his sentence for obstruction of justice because the enhancement was unsupported by the evidence and was based upon judge-found facts in violation of his Sixth Amendment rights as addressed in Blakely v. Washington, 541 U.S. 36 (2004). We exercise jurisdiction pursuant to 28 U.S.C. § 1291, affirm the convictions, but remand the case to the district court with directions to vacate Montague's sentence and resentence Montague.

I

Evidence of Montague's illegal possession of firearms came to the attention of authorities in January, 2003, as a result of Deanne's filing a domestic violence complaint. During the investigation at the Montague home, Deanne stated there were two firearms in the house and one in Montague's truck. The firearms, which were seized by the police, included a .300 Savage rifle, a .22 caliber Marlin rifle, and a .22 Henry repeating rifle. Deanne said the firearms belonged to her husband. The officers also learned Montague had a prior felony conviction.

In June and July, 2003, Deanne informed defense investigators, her husband's mother, and Agent Russell Spann that she had framed her husband. She explained that

2

she took her .22 and two rifles from a trailer on Montague's mother's property, placed them in the Montagues' home and Montague's truck, then called the police and lied about who owned the firearms. When questioned by Spann about the firearms, Deanne could only identify her weapon as a .22, indicated that she knew little about firearms, and then abruptly stated she needed to leave for work. When Spann met with Deanne the following day, she "blurted out, 'I won't lie for him,'" ROA, Vol. VII, at 199, and said the guns belonged to Montague.

In August of 2003, Deanne testified before a grand jury and confirmed the firearms belonged to her husband. She testified she lied about having framed her husband because she did not want him to go to jail. She testified that she was telling the grand jury the truth because, after talking with her children, she felt guilty about lying and did not want to go to jail.

In violation of a court order which prohibited Montague from having any contact with his wife, Montague and Deanne met on at least five occasions at the prison, and also spoke on the phone. Deanne's children indicated she was frightened of Montague. Deanne testified before the grand jury that she and Montague talked about changing her story, and he told her she would not get in trouble if she did so. ROA, Vol. I, Doc. 65, Attachment B, at 10.

At trial, Deanne refused to testify and invoked her marital privilege. At the government's request, the district court admitted her grand jury testimony into evidence

3

pursuant to Federal Rule of Evidence 804(b)(6). The government also presented evidence that Montague had obtained a hunting license, had firearms in his home and truck, hunted on multiple occasions using firearms, and described a .300 Savage rifle as his deer hunting rifle.

II.

*Admission of grand jury testimony*

Montague contends the admission of Deanne's grand jury testimony violated his Sixth Amendment rights under Crawford v. Washington, 541 U.S. 36 (2004), because Deanne's testimony was an out-of-court statement which Montague had no opportunity to cross-examine. Montague also contends the district court misapplied Federal Rule of Evidence 804(b)(6) in determining he had procured the unavailability of his wife as a witness. Although Montague presents a variety of arguments in support of this latter contention, the arguments can be grouped into three general categories: 1) the district court should have conducted an evidentiary hearing to determine whether Deanne invoked her spousal privilege of her own free will, or as a result of Montague's actions, 2) the district court should have asked Deanne to state her reasons for invoking her privilege, and 3) the district court erred in finding Montague caused Deanne to invoke her privilege.

We review "evidentiary rulings under an abuse of discretion standard and reverse district court rulings only for a clearly erroneous finding of fact or an erroneous

4

conclusion of law or . . . a clear error in judgment." United States v. Lang, 364 F.3d 1210, 1222 (10th Cir. 2004). We review "*de novo* the district court's legal conclusions concerning the Federal Rules of Evidence and the Confrontation Clause." United States v. Price, 265 F.3d 1097, 1102-03 (10th Cir. 2001). We accept a district court's factual finding that a defendant procured the absence of a witness unless the finding is clearly erroneous. Id. at 1102.

The Sixth Amendment provides in part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. Const. amend. VI. However, Federal Rule of Evidence 804(b)(6) provides that "[a] statement offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness . . . [is] not excluded by the hearsay rule if the declarant is unavailable as a witness."

Montague asks us to conclude Crawford limited the Rule 804(b)(6) hearsay exception. Our reading of Crawford is to the contrary. In Crawford, the Supreme Court distinguished wrongdoing/forfeiture hearsay exceptions from hearsay exceptions which are based upon reliability. The Court noted that the Roberts v. Ohio, 448 U.S. 56 (1980) reliability test "allows a jury to hear evidence, untested by the adversary process, based on a mere judicial determination of reliability. It thus replaces the constitutionally prescribed method of assessing reliability with a wholly foreign one." Crawford, 541 U.S. at 62. The Court indicated that exceptions based on this reliability test are "very different from

5

exceptions to the Confrontation Clause that make no claim to be a surrogate means of assessing reliability. For example, the rule of forfeiture by wrongdoing (*which we accept*) extinguishes confrontation claims on essentially equitable grounds; it does not purport to be an alternative means of determining reliability." Id. (emphasis added)(citing Reynolds v. United States, 98 U.S. 145, 158-159 (1879)). Simply stated, "[f]orfeiture by wrongdoing is an independent ground for the admissibility of hearsay testimony that survives Crawford." United States v. Rodriguez-Marrero, 390 F.3d 1, 17 (1st Cir. 2004).

As for Montague's argument that an evidentiary hearing was required, the district court did hold an evidentiary hearing to determine whether Deanne was freely invoking her spousal privilege or if she was somehow coerced by Montague to refuse to testify. ROA, Vol. VII, at 4-11. The evidentiary hearing was brief because Montague stipulated the government witnesses would offer certain evidence. As a result, it was unnecessary for the government to call these witnesses. In turn, the district court relied upon this proffered evidence in concluding Rule 804(b)(6) applied. Id. at 4-8.[1]

Montague argues the district court abused its discretion by failing to ask Deanne directly why she was invoking her marital privilege. He contends the district court wrongly concluded the marital privilege would apply in such a hearing. According to Montague, "[i]f her invocation of privilege was prompted by his threats, this would

---

[1] Montague concedes that "defense counsel did stipulate to the proffer of evidence upon which the trial court relied in admitting the grand jury testimony." Aplt. Br. at 19.

constitute a crime against her, about which she would have no privilege to refrain from testifying." Aplt. Br. at 21. In support of this contention, Montague cites to U.S. v. Bahe, 128 F.3d 1440, 1445 (10th Cir. 1997).

Bahe is distinguishable from the case at bar. In Bahe, the issue was whether the defendant could prevent his spouse from testifying against him when she wanted to testify. Id. at 1441-42. We held that "[t]he marital privilege as recognized in the federal courts has two aspects: the testimonial privilege which permits one spouse to decline to testify against the other during the marriage, and the marital communications privilege which either spouse may assert to prevent the other from testifying to confidential communications made during the marriage." Bahe, 128 F. 3d at 1441-42. Although in Bahe we declined to recognize the defendant spouse's marital communications privilege to prevent his wife from testifying, we noted the continuing existence of her testimonial privilege: "[i]t is clear that defendant's wife cannot be compelled to give evidence against her husband . . . ." Id. at 1442. Thus, in the present case, the district court properly concluded Deanne could not be forced to testify regarding her reasons for invoking her marital privilege.

We also reject Montague's contention that the government failed to establish by a preponderance of the evidence that he procured his wife's unavailability as a witness. The district court listed the evidence it relied on to conclude the wrongdoing/forfeiture hearsay exception applied: "You have the contact. You have the prior history. You have

7

what the daughter would say[2] . . . ." ROA, Vol. VII, at 8.[3] The district court explained:

> I let the Grand Jury testimony in under Federal Rule of Evidence
> 804(b)(6), which is the hearsay exception, forfeiture by wrongdoing, based
> on the proffered testimony of the daughter, the history of domestic violence
> and the five or so unauthorized visits in contravention of the Court's order
> by the defendant to his wife while defendant was incarcerated.
> I find the government has shown, by a preponderance of the
> evidence, that the defendant engaged in wrongdoing, that that wrongdoing
> was at least partially intended to procure the declarant, his wife's,
> unavailability and that it was procured since she did exercise her marital
> privilege not to testify against him.

ROA, Vol. VII, at 161. The court added to its reasoning that Deanne's two daughters

gave consistent testimony, and that Deanne testified before the grand jury that Montague

told her that she would not get in trouble if she changed her story. Id. at 162.

Montague argues the district court wrongly concluded he visited with his wife five

times during his incarceration, and that these visits were evidence that he procured her

unavailability. Regarding these visits at the jail, the district court explained its concern:

"I'm troubled, though, by -- I mean, the order was that the defendant not talk to his wife.

I know he didn't go see her, but she went to see him. He could have said, 'I can't talk to

---

[2] Both daughters would have testified Montague abused Deanne during their
marriage and that the abuse occurred as often as three times a week. Daughter Manadi
Archuletta would have testified Montague and her mother conversed by phone while
Montague was in jail and that her mother had been visiting the defendant in jail.
Daughter Yvonne Liddiard would have testified her mother was afraid of Montague.

[3] Montague also stipulated that the jail visitation logs showed multiple visits
involving Deanne visiting with him and that Ed Spann would have testified Deanne
feared her husband, did not want Montague to get in trouble, and knew about the no
contact order.

you.' He apparently didn't. She visited him several times. So if you've got an argument it's that he's contributed to the unavailability if she's unavailable." ROA, Vol. VI, at 7-8. The district court was correct in relying upon these conversations at the jail in determining whether Montague procured his wife's unavailability as a witness.

Montague also argues the district court erred in considering his history of spousal abuse. According to Montague, he could not have knowingly and intentionally waived his confrontation rights through misconduct committed before he could have anticipated this prosecution. We disagree. To begin with, Montague did not object to the admission of evidence of spousal abuse as offered by the government in support of its contention that he procured Deanne's unavailability. Further, he stipulated to the proffered testimony describing his history of spousal abuse. In our view, this history was relevant to provide a better understanding of Montague's relationship with his wife. Although evidence of Montague's pre-prosecution conduct may be insufficient to warrant application of the wrongdoing/forfeiture exception,[4] our focus is upon his <u>post-incarceration</u> communication with his wife and whether that conduct procured her unavailability as a witness.

We conclude there was sufficient evidence presented here to support the district

---

[4] <u>But see</u> Adam M. Krischer, <u>Though Justice May Be Blind, It Is Not Stupid: Applying Common Sense to Crawford in Domestic Violence Cases</u>, 38-DEC Prosecutor 14, 15-16 (2004) (arguing the contrary position that past abuse should be enough to qualify for forfeiture of one's right to confrontation by wrongdoing).

court's ruling that Montague's wrongdoing caused Deanne's invocation of her marital privilege.  In violation of a no-contact court order, Montague repeatedly communicated with Deanne, both in person during her visits to the jail and over the phone.  Although Montague asserts there is no evidence as to the content of their conversations, Deanne testified to the grand jury that they spoke about changing her story and that the defendant informed her that she would not get in trouble if she did so.  ROA, Vol. I, Doc. 65, Attachment B, at 10.  Thus, the district court's determination that Montague procured Deanne's unavailability was not clearly erroneous.

III.

*Sentencing*

At sentencing, the district court concluded that Montague obstructed justice and enhanced his sentence pursuant to U.S.S.G. § 3C1.1.  Although Montague asserted a Blakely objection, the court rejected it.  Montague now challenges his sentence, arguing that the § 3C1.1 enhancement was based upon facts found by the court that were not reflected in the jury's verdict or admitted by him.  Montague asserts and the government agrees that the district court violated his Sixth Amendment rights.  United States v. Booker, 125 S. Ct. 738, 755-56 (2005).

Because the error is of constitutional magnitude, the burden is on the government to prove the error was harmless beyond a reasonable doubt.  United States v. Lang, 405 F.3d 1060, 1065 (10th Cir. 2005).  The government concedes that, in light of U.S. v.

10

Labastida-Segura, 396 F. 3d 1140, 1143 (10th Cir. 2005), it cannot show the error was harmless beyond a reasonable doubt. Accordingly, we conclude it is necessary to remand the case to the district court with directions to vacate Montague's sentence and resentence him.

Although both Montague and the government ask us to decide whether the district court's obstruction of justice enhancement was proper, our ruling on that question at this juncture "would be premature at best and unnecessary at worst." United States v. Coumaris, 399 F. 3d 343, 351 (D.C. Cir. 2005). Our remand for resentencing in light of Booker will require the district court to reassess Montague's sentence under current law. If any further appellate review of Montague's sentence will occur, it should occur after the district court has exercised its sentencing discretion on remand.

We AFFIRM Montague's convictions, and REMAND the case to the district court with directions to vacate Montague's sentence and resentence him in light of Booker.