**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 17-4489

UNITED STATES OF AMERICA,

Plaintiff − Appellee,

v.

SAMUEL PRATT, a/k/a Promise,

Defendant – Appellant.

Appeal from the United States District Court for the District of South Carolina, at Columbia. Terry L. Wooten, Chief District Judge. (3:16-cr-00207-TLW-1)

Argued: September 28, 2018                    Decided: February 8, 2019

Before MOTZ, AGEE, and DIAZ, Circuit Judges.

Affirmed in part, vacated in part, and remanded by published opinion. Judge Diaz wrote the opinion, in which Judge Motz and Judge Agee joined.

**ARGUED:** David Bruce Betts, LAW OFFICES OF DAVID B. BETTS, Columbia, South Carolina, for Appellant. James Hunter May, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee. **ON BRIEF:** Beth Drake, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

DIAZ, Circuit Judge:

Samuel Pratt was convicted of eight counts related to sex trafficking and child pornography. He appeals on two grounds. On the first ground, we hold that the district court should have suppressed evidence from Pratt's cellphone. That error was not harmless because the remaining evidence does not satisfy the elements of the two child pornography counts. On the second ground, we hold that the district court did not err in admitting hearsay statements. Accordingly, we vacate Pratt's convictions on the two child pornography counts, affirm his other six convictions, vacate his sentence, and remand to the district court.

I.

FBI agents in the Carolinas investigated Samuel Pratt for running a prostitution ring that included juveniles. The agents found a post on Backpage.com in which Pratt advertised the sexual services of seventeen-year-old "RM"[1] at a hotel in Columbia, South Carolina. An agent scheduled a "date" with RM at the hotel for February 3, 2016. When the agent entered the hotel room, he identified himself to RM as law enforcement. She agreed to speak with several agents. RM told them she was seventeen and working as a prostitute at the hotel. She said her "boyfriend" Pratt brought her across state lines from North Carolina. J.A. 66. Responding to an agent's question, she said she had texted

_____

[1] We refer to minor victims solely by their initials.

nude photographs of herself to Pratt's phone. RM allowed FBI agents to take her cellphone.

At the same time, two FBI agents spoke to Pratt in the hotel parking lot. Agent Stansbury, who had spoken with RM, joined them. Stansbury confronted Pratt, who was holding an iPhone. Pratt told Stansbury the phone was his. Stansbury asked if Pratt had nude photos of RM on the phone. Pratt responded "yes, I've got pictures of her on the phone." J.A. 67.

Stansbury then seized the phone, telling Pratt the FBI would get a search warrant. Pratt refused to consent to the seizure or disclose the phone's passcode. And the FBI didn't get a warrant to search the phone until March 4, 2016—a full 31 days after seizing it. When agents finally searched the phone, they found nude images of RM and incriminating text conversations with RM and others.

Soon after, a federal grand jury indicted Pratt.[2] At Pratt's initial appearance, the magistrate judge ordered him to have no contact with anyone "who is a witness, or may be a witness, or a victim." J.A. 524. Despite that order, Pratt repeatedly called his mother from prison to coordinate continued prostitution operations. In several calls, he had his mother put RM on the phone. He repeatedly told RM not to testify or cooperate.

---

[2] The nine counts were: (1) conspiracy to commit sex trafficking, (2) producing child pornography, (3) sex trafficking of a minor, (4) attempt to commit sex trafficking, (5) possession of child pornography, (6) coercion or enticement of a minor, (7) felon in possession of a firearm, (8) obstruction of justice, and (9) interstate travel to carry on an unlawful activity. The government dismissed count nine before trial.

Before trial, Pratt moved to suppress evidence from his phone. In his written pleadings, Pratt only contended that the seizure of the phone was unconstitutional. But at the suppression hearing, he also argued that the delay between the seizure and obtaining the search warrant was unconstitutional. The government explained that the delay came from the need to decide whether to seek a warrant in North Carolina or South Carolina. Ruling from the bench, the district court denied the suppression motion, finding the seizure justified and the delay reasonable.

The government tried to get RM to testify. Several months after Pratt's calls from jail, the FBI served her with a subpoena. When agents later spoke to her, she refused to testify. The FBI obtained a material witness warrant for her, but the U.S. Marshals couldn't find her. Several other women would testify at trial that Pratt would beat any prostitute—including RM—whom he considered disobedient.

With RM unavailable, the government sought to introduce her statements to FBI agents about the prostitution ring and about the nude images she sent Pratt. The district court overruled Pratt's hearsay and confrontation objections, ruling that Pratt forfeited those objections by intimidating RM into refusing to testify. An agent then recounted RM's statements.

In addition, the government introduced evidence from Pratt's cellphone. That evidence included 28 images alleged to be child pornography, metadata for the images, text message conversations, and advertisements Pratt placed for prostitution. The

government also introduced an "extraction report" on data from RM's phone. It included text messages but didn't include photos or videos.[3]

The jury convicted Pratt on all eight counts. The district court imposed life sentences on four counts and concurrent time on the other four. Pratt appeals the denial of his suppression motion and the admission of RM's prior statements.

## II.

Pratt contends that the district court should have suppressed information from his cellphone because the FBI unreasonably delayed getting a search warrant. He does not contend that the seizure of the phone itself was unconstitutional. To justify the delay, the government points to the difficulty of coordinating the various law enforcement agencies involved in the Pratt investigation and deciding where to seek a search warrant for the phone. In the alternative, the government argues that it could keep the phone indefinitely because it was an instrumentality of Pratt's crimes.

We review the factual findings in a suppression motion for clear error and the legal conclusions de novo.[4] *See United States v. Kehoe*, 893 F.3d 232, 237 (4th Cir.

---

[3] An agent testified that the extraction report is "just like the call logs, the text messages . . . I don't think this has the videos, or any videos or pictures." J.A. 187. The prosecutor asked, "So, just to be clear, Exhibit 21, forensic download, absent videos and photographs?" *Id.* The agent responded, "Correct." *Id.*

[4] The government contends that we should apply plain error review because Pratt didn't mention unreasonable delay in his motion papers. We disagree. Pratt pressed the argument at the suppression hearing and the district court expressly ruled from the bench on the claim of delay in obtaining the search warrant. *See United States v. Williams*, 504 (Continued)

2018). If the district court erred, we must assess whether any such error was harmless. *See* Fed. R. Crim. P. 52(a); *United States v. Abu Ali*, 528 F.3d 210, 231 (4th Cir. 2008).

We hold that the district court erred by denying the suppression motion and that the error was not harmless regarding the child pornography counts.

A.

The constitutional question is whether the extended seizure of Pratt's phone was reasonable. A seizure that is "lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests." *United States v. Jacobsen*, 466 U.S. 109, 124 (1984) (citing *United States v. Place*, 462 U.S. 696 (1983)). To determine if an extended seizure violates the Fourth Amendment, we balance the government's interest in the seizure against the individual's possessory interest in the object seized. *See Place*, 462 U.S. at 703; *United States v. Van Leeuwen*, 397 U.S. 249, 252–53 (1970).

A strong government interest can justify an extended seizure. *See, e.g.*, *Illinois v. McArthur*, 531 U.S. 326, 332–33 (2001) (suspect prevented from entering home for two hours while officers obtained a warrant); *United States v. Montoya de Hernandez*, 473 U.S. 531, 541–44 (1985) (suspected alimentary canal smuggler detained for 16 hours); *Van Leeuwen*, 397 U.S. at 252–53 (package detained for 29 hours while seeking a warrant). But if the individual's interest outweighs the government's, an extended

U.S. 36, 41 (1992) (argument is preserved if pressed or passed upon). Pratt therefore preserved this argument and the plain error standard does not apply.

6

seizure may be unreasonable.  *See Rodriguez v. United States*, 135 S. Ct. 1609, 1615–16 (2015) (traffic stop extended for dog sniff without reasonable suspicion); *Place*, 462 U.S. at 698–99 (traveler's luggage detained at airport for 90 minutes to conduct dog sniff).  An individual diminishes his interest if he consents to the seizure or voluntarily shares the seized object's contents.  *See, e.g.*, *United States v. Christie*, 717 F.3d 1156, 1162–63 (10th Cir. 2013).

Here, Pratt didn't diminish his possessory interest in the phone.  He didn't consent to its seizure or voluntarily share the phone's contents.  The government's only explanation for the 31-day delay in obtaining a warrant was that Pratt committed crimes in both North Carolina and South Carolina and agents had to decide where to seek a warrant.  We find this explanation insufficient to justify the extended seizure of Pratt's phone.

Pratt's case parallels *United States v. Mitchell*, 565 F.3d 1347 (11th Cir. 2009).  There, an agent seized a computer but failed to obtain a search warrant for 21 days.  *Id.* at 1351.  The agent explained that he left town for a lengthy training and didn't think the warrant was urgent.  *Id.*  The Eleventh Circuit considered the seizure unreasonable because the agent could have applied for a warrant before he left or passed the case to someone else.  *Id.* at 1351–52.  But the court cautioned that overwhelmed police resources or other "overriding circumstances" could justify extended delays.  *Id.* at 1353.

The Eleventh Circuit has applied this standard in two later cases.  In *United States v. Vallimont*, 378 F. App'x 972, 975–76 (11th Cir. 2010), it upheld a 45-day delay in getting a search warrant for a seized computer.  The delay was reasonable because the

7

investigator was diverted to other cases, the county's resources were overwhelmed, and the defendant diminished his privacy interest by giving another person access to the computer. *Id.* And in *United States v. Laist*, 702 F.3d 608, 616–17 (11th Cir. 2012), the court upheld a 25-day delay in getting a search warrant for a seized computer. The delay was reasonable because the agents worked diligently on the affidavit; they were responsible for investigations in ten counties; and the defendant consented to the seizure and had been allowed to keep certain files, diminishing his privacy interest. *Id.* Other circuits have upheld equivalent delays where the government could justify them.[5]

Pratt's case is closest to *Mitchell* because the government has no persuasive justification for the delay in obtaining a search warrant for Pratt's phone. Unlike the agencies in *Vallimont* and *Laist*, the FBI's resources were not overwhelmed. Simply put, the agents here failed to exercise diligence by spending a whole month debating where to get a warrant. *See United States v. Burgard*, 675 F.3d 1029, 1033–34 (7th Cir. 2012) (describing diligence as an important factor). That decision shouldn't have taken a month. It is unlikely that the forum for a warrant would affect a later prosecution: a point the government conceded at oral argument.[6] And unlike in *Vallimont* and *Laist*, Pratt had

---

[5] *See, e.g.*, *United States v. Gill*, 280 F.3d 923, 929 (9th Cir. 2002) (magistrate unavailable); *United States v. Martin*, 157 F.3d 46, 54 (2d Cir. 1998) (delay fell over weekends and Christmas); *United States v. Aldaz*, 921 F.2d 227, 230–31 (9th Cir. 1990) (delay to transport package for dog sniff); *United States v. Mayomi*, 873 F.2d 1049, 1050, 1054 (7th Cir. 1989) (delay over weekend to corroborate tip and procure drug-sniffing dog).

[6] The Seventh Circuit did accept a six-day delay for an officer to seek a warrant for a cellphone where he needed to consult with prosecutors and with the officer who (Continued)

an undiminished possessory interest in the cellphone—he didn't consent to the seizure and he wasn't allowed to retain any of the phone's files. *Cf. Riley v. California*, 134 S. Ct. 2473, 2494–95 (2014) (describing the strong privacy interest in a cellphone). Given Pratt's undiminished interest, a 31-day delay violates the Fourth Amendment where the government neither proceeds diligently nor presents an overriding reason for the delay.

We decline to affirm on the government's alternative argument that it could retain the phone indefinitely because it had independent evidentiary value, like a murder weapon. Only the phone's files had evidentiary value. The agents could have removed or copied incriminating files and returned the phone. Pratt's phone is thus distinct from the suitcase in *United States v. Carter*, 139 F.3d 424, 426 (4th Cir. 1998) (en banc). In *Carter*, the police arrested a man at an airport for stealing another traveler's bag. *Id.* We affirmed that the police could retain the man's own suitcase as evidence he didn't take the other bag by mistake. *Id.* But here, the phone itself is evidence of nothing. We hold that the delay in obtaining a search warrant was unreasonable. The district court therefore erred in denying Pratt's motion to suppress.

B.

---

seized the phone. *See Burgard*, 675 F.3d at 1033–34. But the Seventh Circuit criticized that delay, and Pratt's delay was more than five times as long. *See id.*

9

But even though the district court should have suppressed evidence from Pratt's cellphone, we must examine whether the error was harmless.[7]  *See Abu Ali*, 528 F.3d at 231.  On appeal, "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."  Fed. R. Crim. P. 52(a).  The essential question is whether "it [is] clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error."  *United States v. Garcia-Lagunas*, 835 F.3d 479, 488 (4th Cir. 2016) (quoting *Neder v. United States*, 527 U.S. 1, 18 (1999)).

To answer that question, we look to the strength of the government's remaining evidence, the centrality of the issue, steps taken to mitigate any error, and the closeness of the case.  *See United States v. Recio*, 884 F.3d 230, 238 (4th Cir. 2018); *United States v. Ince*, 21 F.3d 576, 583 (4th Cir. 1994).  The government bears the burden of establishing harmlessness.  *See Ince*, 21 F.3d at 582.

After examining the trial evidence, we are not satisfied that the government met its burden for counts two and five.  Count two charges Pratt with producing images containing child pornography, 18 U.S.C. § 2251(a); count five charges him with possessing images containing child pornography, *id.* § 2252A(a)(5)(B).  Both charges

---

[7] The following harmless error discussion only applies to count two (producing child pornography) and count five (possessing child pornography).  Pratt's phone is irrelevant to counts seven (felon in possession) and eight (obstruction of justice).  The error does affect the sex trafficking and enticement charges (counts one, three, four, and six), for which text messages from Pratt's phone were evidence.  But the error was harmless for those four counts because the government introduced duplicates of many of those text messages from RM's phone and elicited extensive testimony about the prostitution operation.

require the government to prove that the images depict a minor engaging in "sexually explicit conduct." *See id.* §§ 2251(a), 2252A(a)(5)(B). The two offenses include slightly different categories of conduct. *See id.* §§ 2251(a), 2256(2)(A) (count two); *id.* §§ 2252A(a)(5)(B), 2256(2)(B), 2256(8)(B) (count five). But under both definitions, the only relevant category is "lascivious exhibition of the genitals or pubic area."[8] *Id.* § 2256(2)(A), (2)(B). Thus, if the trial evidence that did not come from Pratt's phone is insufficient to find that the images fit into this category, the error cannot be harmless.

Beyond Pratt's phone, the government introduced insufficient evidence that the images meet the statutory requirements. As evidence for the child pornography counts, the government introduced Agent Stansbury's recollection of statements RM and Pratt made at the hotel. Those statements were admissible under the hearsay exception for forfeiture by wrongdoing, as discussed in Part III below. Stansbury recounted RM's statements about the photos twice. First, he recounted her saying "he did have naked photos of her, that they sent each other naked photos . . . . [H]e's got naked photos of me on his cell phone." J.A. 66. Second, he recounted her saying she "sent him nude photographs of herself and that he had nude photographs of her on his phone . . . . [H]e has naked pictures of me on his cell phone." J.A. 66–67.[9] And Stansbury said he asked

---

[8] From the trial testimony, we can't infer that the images contained any of the other categories of conduct—sexual intercourse, masturbation, bestiality, or sadistic or masochistic abuse. *See* 18 U.S.C. § 2256(2)(A), (2)(B).

[9] Another agent said RM suggested that "there was child pornography" on Pratt's phone. J.A. 57. But the agent appears to have used "child pornography" colloquially, not
(Continued)

11

Pratt "[D]o you have naked pictures of [RM] . . . on the phone?" to which he says Pratt responded "yes, I've got pictures of her on the phone." J.A. 67.[10]

In each statement, the photos are described solely with the generic terms "naked" or "nude." Some "naked" or "nude" photos are lascivious and display the genitals or pubic area. But many photos an ordinary viewer would describe as "naked" or "nude" are not lascivious or do not depict the genitals or pubic area. Thus, without more, we can't infer that the photos contain sexually explicit conduct as defined by statute.

Considering all the trial testimony, there was insufficient evidence for a "rational trier of fact" to find the "essential element[]" that the photos contained sexually explicit conduct. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Given this failure of proof, the error was not harmless regarding counts two and five. We therefore vacate Pratt's convictions for the two child pornography offenses.[11]

C.

---

as a legal conclusion. No witness testified that the photos depicted the genitals or pubic area.

[10] At trial, FBI agents described the images from Pratt's phone as "nude" photos of RM. J.A. 174, 359. At least one of those descriptions derived from viewing the photos. J.A. 174. That description should have been suppressed. *See Wong Sun v. United States,* 371 U.S. 471, 485 (1963) ("[T]estimony as to matters observed during an unlawful invasion" is also subject to exclusion.). In any event, the agents' generic description of the photos adds nothing new.

[11] When the government addressed harmless error at oral argument, it incorrectly stated that it had introduced copies of pornographic images from RM's phone. In a post-argument submission, the government conceded that no such images had been introduced.

12

We must also decide whether to vacate Pratt's entire sentence in light of this error. "[A]n appellate court when reversing one part of a defendant's sentence 'may vacate the entire sentence . . . so that, on remand the trial court can reconfigure the sentencing plan.'" *Pepper v. United States*, 562 U.S. 476, 507 (2011) (quoting *Greenlaw v. United States*, 554 U.S. 237, 253 (2008)). This court has recognized that district courts consider all counts when crafting sentencing packages. *See United States v. Smith*, 115 F.3d 241, 246 (4th Cir. 1997). We do have discretion to vacate only the sentences for vacated convictions. *See, e.g.*, *United States v. Hurwitz*, 459 F.3d 463, 482–83 (4th Cir. 2006); *United States v. Berry*, 369 F. App'x 500, 502–03 (4th Cir. 2010). But because sentences are often interconnected, a full resentencing is typically appropriate when we vacate one or more convictions. *See United States v. Ventura*, 864 F.3d 301, 309 (4th Cir. 2017).

Here, the district court likely crafted a sentencing package with all eight convictions in mind. A resentencing might not change how long Pratt stays in prison, given that the district court imposed multiple life sentences. But "there may be some chance that other parts of [Pratt's] sentence may be affected by" vacating the child pornography counts. *United States v. Jones*, No. 95-5370, 1998 WL 19620, at *7 (4th Cir. Apr. 22, 1998). The district court is in the best position to make that judgment. We therefore vacate Pratt's entire sentence. On remand, the government may retry Pratt for the child pornography counts. Once the government has retried him or declined to do so, the district court shall resentence Pratt and "make any correction to his sentence it deems appropriate." *Id.* We express no opinion on whether the district court should modify his sentence.

13

III.

In addition to his Fourth Amendment argument, Pratt contends that the district court erred by admitting an FBI agent's recollection of RM's statements about the prostitution business and the nude images she sent him. Unlike most evidentiary issues, we review this ruling de novo because it implicates the Confrontation Clause. *See United States v. Summers*, 666 F.3d 192, 197 (4th Cir. 2011). We see no error.

The district court admitted RM's statements under the "forfeiture by wrongdoing" exception to the hearsay rule. Under this exception, a district court may admit hearsay statements "offered against a party that wrongfully caused—or acquiesced in wrongfully causing—the declarant's unavailability as a witness, and did so intending that result." Fed. R. Evid. 804(b)(6). The elements are (1) wrongful conduct, (2) intended to cause the witness's unavailability, and (3) actually causing the witness's unavailability. *See United States v. Jackson*, 706 F.3d 264, 267–69 (4th Cir. 2013). The Constitution normally forbids testimonial statements from an unavailable witness whom the defendant had no previous chance to cross-examine. *See* U.S. Const. amend. VI; *Crawford v. Washington*, 541 U.S. 36, 68–69 (2004). But the Supreme Court has recognized that wrongfully and intentionally causing a witness's unavailability estops a defendant from asserting confrontation rights. *See Giles v. California*, 554 U.S. 353, 359 (2008); *Crawford*, 541 U.S. at 62.

Several times, Pratt called his mother from jail and had her put RM on the phone. The government contends that Pratt threatened RM in these calls. Those calls plus Pratt's

14

history of violence against women caused RM not to testify, in the government's view. Pratt denies that he intended to threaten RM and that his calls caused her unavailability.

There is no question Pratt engaged in wrongful conduct when he violated the magistrate judge's order and contacted a potential witness (and victim) from jail. *See United States v. Montague*, 421 F.3d 1099, 1103–04 (10th Cir. 2005) (violating order not to contact witness is wrongful). Thus, the only questions are intent and causation.

In his phone conversations with RM from jail, Pratt's intent to make RM unavailable is plain. As an ineffective ruse, Pratt would pretend to be talking to someone other than RM. In the first call he said, speaking of RM, "[f]or some reason they saying that she's a witness . . like she cooperating or something . . . I'm saying don't even try and speak to her or nothing because even if . . . anybody tries to speak to her I'm gone get in trouble understand." J.A. 676. He followed up with, "I hope you don't think she's cooperating right." *Id.* RM said she was not cooperating. *Id.* Pratt then said, "I hope if [RM] is talking to ["AM" (another minor victim)] . . . I hope she can find out if [AM is] cooperating too." *Id.* "I just hope neither one of them is cooperating," he continued. *Id.* Over and over, Pratt tried to dissuade RM from testifying.

In a second call, he told her "[RM] and [AM] need to speak cause . . . that's the two pieces to the puzzle that . . . get me out of here *don't you talk to them.*" J.A. 677 (emphasis added). In a third call, he urged her to deny that he used the alias "Promise," with which some witnesses would identify him at trial. J.A. 679. Pretending that he was speaking to RM's cousin, he told her the government was calling RM a "witness" and

15

would question her. *Id.* He urged her to deny any knowledge. J.A. 680. In all three calls, Pratt tried to get RM not to testify or not to testify honestly.

Those calls caused RM's unavailability. Standing alone, the calls sound like veiled threats. But the threats become obvious against the backdrop of the graphic testimony of several women at trial who detailed how Pratt would beat prostitutes—including RM—whom he considered disobedient. *See Montague*, 421 F.3d at 1102–04 (recognizing forfeiture from wrongdoing through threatening phone calls and history of abuse); *State v. Maestas*, 412 P.3d 79, 90–91 (N.M. 2018) (same). RM would have received the message that Pratt would hurt her in the future if she disobeyed Pratt and testified against him.

Pratt contends that the time lapse between the phone calls and the trial reduced the salience of any threat. But given Pratt's history of abusing RM, we think it unlikely that time eroded the sense of threat. That threat caused RM not to testify. Her personal feelings for Pratt—whom she considered her boyfriend—may have played a role too. But those feelings were tied up in the same abusive relationship.

The district court did not err by admitting an agent's recollection of RM's statements.

IV.

In sum, the district court erred by refusing to suppress information from Pratt's cellphone. The error was not harmless because the government's other evidence could not establish the statutory elements of counts two and five. On the evidentiary issue, the

16

district court did not err by admitting RM's hearsay statements under Federal Rule of Evidence 804(b)(6). Accordingly, we vacate Pratt's convictions for counts two and five and affirm the remaining convictions. We also vacate Pratt's sentence and remand to the district court for further proceedings consistent with this opinion.

*AFFIRMED IN PART, VACATED IN PART, AND REMANDED*