Filed 2/3/21  P. v. Bell CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G058309 |
| v. | (Super. Ct. No. 19CF0044) |
| BRANDON LAMAR BELL, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Robert Alan Knox, Judge.  Affirmed.

David R. Greifinger, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting and Anthony Da Silva, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

After his motion to suppress evidence was denied, defendant Brandon Lamar Bell pleaded guilty to pimping Jane Doe No. 1 (Pen. Code, § 266h, subd. (a); count 1);[1] pandering by procuring Jane Doe No. 1 (§ 266i, subd. (a)(1); count 2); possession of a concealed loaded unregistered firearm in a vehicle (§ 25400, subds. (a)(1), (c)(6); count 3); pimping Jane Doe No. 2 (§ 266h, subd. (a); count 5); and pandering by procuring Jane Doe No. 2 (§ 266i, subd. (a)(1); count 6).[2] Per the terms of the plea agreement, the court sentenced defendant to a four-year prison sentence on count 1. The court also sentenced defendant to four years on counts 2, 5, and 6, and two years on count 3, all to run concurrently.

On appeal defendant raises various contentions related to the denial of his suppression motion. He argues the search warrants issued for the cell phones violated various provisions of the California Electronic Communications Privacy Act or 2015 (ECPA) (§ 1546 et seq.). He also argues the delays between the seizures of the cell phones and the applications for the search warrants violated his rights under the Fourth Amendment of the United States Constitution. He further contends one of the warrants was invalid on its face because the warrant included names of people not involved in the case as parties to be searched. Finally, he argues the court improperly sentenced him on counts 2 and 6 because the sentences should have been stayed pursuant to section 654 instead of running concurrently with count 1. We reject each contention and affirm.

---

[1] All statutory references are to the Penal Code.

[2] The court dismissed count 4, possession of a large-capacity magazine (§ 32310, subd. (c)), pursuant to section 995.

FACTS AND PROCEDURAL HISTORY

On May 28, 2017, police stopped a car because they suspected prostitution activity. Defendant was driving the car and E. was in the passenger seat. Defendant's driver's license had been suspended so the officers searched the car and found a handgun. The officers arrested defendant for possession of the handgun. The officers also took two cell phones as evidence, one belonging to defendant and one belonging to E.

On January 2, 2019, police officers conducted a prostitution sting operation in which an officer agreed to meet a woman for sex at a hotel. Defendant dropped off the woman pictured in the online advertisement the officer used to set up the date. The woman, A., was arrested and admitted to working as a prostitute. Defendant was also detained and later arrested. Both A. and defendant had cell phones in their possession. The officers called defendant's cell phone with A's cell phone and defendant's cell phone "illuminated with the name 'Princess.'" A third cell phone was discovered in the glovebox of defendant's car.

After acquiring warrants, officers searched all of the cell phones recovered from the May 2017 and January 2019 incidents. Text messages between defendant and both E. and A., were recovered from the cell phones and introduced into evidence during defendant's preliminary hearing.

Defendant filed a motion to suppress "[a]ll electronic communication and all electronic communication information" recovered from each of the cell phones.

The following evidence was introduced during the hearing on defendant's suppression motion.

*Warrants Related to the May 2017 Arrest*

On December 26, 2018, Detective Valdez prepared an affidavit and request for a search warrant for defendant's and E.'s cell phones, which had remained in police

3

possession since the May 28, 2017 arrest (December 26, 2018 Warrant). The warrant commanded law enforcement officers to "[p]hysically and forensically search all data which constitutes evidence and instrumentalities of Pimping, Pandering and Prostitution occurring between [1 year before date of arrest—date of arrest], including communications referring or relating to this investigation involving [defendant] and [E.]" In the warrant affidavit, Valdez also requested that the warrant authorize delayed notification of the search to defendant and E.: "Due to the fact that [E.] is out of custody and because cellular phone data has the ability to be remotely deleted/wiped, I believe disclosure of the aforementioned information and making it public record will lead to possible destruction of the phones/devices used by [defendant] and [E.] Additionally, providing notification could likely result in [E.] absconding to avoid detection/arrest." The warrant was signed on the same day it was requested and it allowed for delayed notification of the search to defendant and E.

During cross-examination, Valdez stated that at the time she wrote the affidavit, she did not "think [the cell phone] would be wiped." She then clarified that she meant: "I didn't think she would wipe out the phone. Or she had wiped it out at the time I wrote the warrant." Valdez said she had not understood the initial question and she "honestly didn't know what to think with regards to the phone because—that's why we were writing the warrant. We didn't know what was in there." She said she was concerned E. would wipe the phone if she was given notification that information on the cell phone was about to be extracted. Although she had asked for delayed notification, Valdez nevertheless sent notice of the search pursuant to the search warrant to defendant and E. the day before the extractions of data from the phones began.

In July 2019, Detective Hawkins replaced Valdez on the investigation and wrote an almost identical warrant for a search of the same cell phones (July 17, 2019 Warrant). The scope of the warrant was identical to the December 26, 2018 Warrant. The second warrant also sought delayed notification and used the exact same wording as

4

justification for the delay as had the previous warrant.  The warrant was signed by the magistrate on the same day it was requested.  The notice of the search pursuant to the warrant and the extraction of data from the cell phones both happened that day.

*Warrants Related to the January 2019 Arrest*

Seven days after defendant's January 2, 2019 arrest, Detective Speakman prepared a search warrant (January 9, 2019 Warrant) for A's phone, the phone found on defendant's person, and the phone found in defendant's car.  The warrant commanded law enforcement officers to "[p]hysically and forensically search all data which constitutes evidence and instrumentalities of pimping, pandering, human trafficking, and prostitution, including communications referring or relating to this investigation involving [J.L. and M.M.]"  Speakman used a template in preparing the warrant and mistakenly left the names from the template in the warrant.

The affidavit of probable cause for the warrant described defendant's arrest and referred to him as "S-Bell."  A. was referred to as "V-DOE."  The conclusion of the affidavit stated, "Based on my training, and experience, it is my belief that information obtained from the cellphones will support the charges against Brandon Bell."  It also stated, "A cell phone examination can retrieve information, whether deleted or undeleted, which can assist with this investigation and show a felony was committed by Brandon Bell."

The affidavit also stated, "The download process is automated and forensic examiners are not able to manipulate the information extracted or to restrict the information being extracted to a particular date range."  "Further, I believe based on my training and experience that information prior to the date range of this crime, will show the suspect's knowledge of prostitution activity, how and where to recruit women or girls into prostitution, and terminology or information related to the pimping/prostitution subculture."  Speakman's affidavit asked the court "to determine that, based on the nature

5

of this case, it is not appropriate or reasonable to specify the time periods of information to be extracted from the device(s) . . . ." The extraction of data from all of the cell phones recovered in the January 2, 2019 arrest occurred in January 2019.

On July 15, 2019, Speakman rewrote the search warrant, correcting the erroneous inclusion of the template names (July 15, 2019 Warrant). Another extraction of data from one of the cell phones recovered in the January 2, 2019 arrest was performed the day before the hearing on defendant's motion to suppress.

## DISCUSSION

We review the court's decision to deny defendant's suppression motion for substantial evidence supporting the findings on questions of fact and apply the de novo standard of review to the court's conclusions on questions of law. (*People v. Carter* (2005) 36 Cal.4th 1114, 1140.)

*The ECPA*

The ECPA (§ 1546 et seq.) regulates the government's access to a private party's electronic information. Section 1546.1 subdivision (a)(3) generally prohibits "Access[ing] electronic device information by means of physical interaction or electronic communication with the electronic device." However, section 1546.1(c)(1) allows for access to electronic device information with a search warrant.

Section 1546.1, subdivision (d)(1) provides: "The warrant shall describe with particularity the information to be seized by specifying, as appropriate and reasonable, the time periods covered, the target individuals or accounts, the applications or services covered, and the types of information sought . . . ." (*Ibid*.) However, the time periods do not need to be specified if the court "determine[s] that it is not appropriate to

specify time periods because of the specific circumstances of the investigation, including, but not limited to, the nature of the device to be searched." (*Ibid.*)

Section 1546.2, subdivision (a)(1) requires the governmental entity seeking the warrant to provide written notice to the identified targets of the warrant "contemporaneously with the execution of a warrant." The party seeking the warrant may request to delay notification via a sworn affidavit. (*Id.*, subd. (b)(1). The court shall grant the request to delay notification "if the court determines that there is reason to believe that notification may have an adverse result, but only for the period of time that the court finds there is reason to believe that the notification may have that adverse result, and not to exceed 90 days." (*Ibid.*)

"Upon expiration of the period of delay of the notification" the government entity must serve the identified targets of the warrant with written notice which meets the requirements of section 1546.2(a)(1) as well as "a copy of all electronic information obtained or a summary of that information . . . ." (§ 1546.2, subd. (b)(3).)

Section 1546.4, subdivision (a) allows a defendant to "move to suppress any electronic information obtained or retained in violation of the Fourth Amendment to the United States Constitution or of this chapter [the ECPA]." A motion made under this subdivision is "subject to review in accordance with the procedures set forth in subdivisions (b) to (q), inclusive, of Section 1538.5." (*Ibid.*)

Finally section 1546.4, subdivision (c), provides: "An individual whose information is targeted by a warrant . . . that is inconsistent with this chapter, . . . may petition the issuing court to void or modify the warrant, . . . or to order the destruction of any information obtained in violation of this chapter."

*The First Alleged ECPA Violation—The December 26, 2018 Warrant*

Defendant first argues the December 26, 2018 Warrant did not meet the requirements for delayed notification under section 1546.2, subdivision (b)(1) because

7

there was "no reason for the court to believe that contemporaneous notification might have an 'adverse result.'"

Defendant is *not* arguing that contemporaneous notice of the December 26, 2018 Warrant was not in fact given. That argument, had it been made, would be fruitless because substantial evidence supports a finding that Valdez served the required notice contemporaneously with issuance of the warrant. Referring to the warrant issued on December 26, 2018. Valdez testified as follows:

"Q So that same day, you got the warrant, and that same day you sent notification—

"A Uh-huh.

"Q Is that a yes?

"A Yes.

"Q That same day you sent the notification—

"A Correct.

"Q You sent the notice on the 26th.

"A Uh-huh, yes."

Instead, defendant argues that the mere *request* for delayed notification was faulty and for that reason alone the evidence extracted from the cell phones the next day must be suppressed. Defendant does not ground this argument on the Fourth Amendment. He relies on section 1546.4, subdivisions (a) and (c) which provide a remedy to a targeted person to move for suppression of evidence and petition for the destruction of evidence seized in "violation of this chapter." (*Id*., subd. (c).) Defendant construes an unnecessary request for delayed notice as a "violation of this chapter" thereby *requiring* the destruction of the evidence, even though law enforcement did not actually delay the notice. Nonsense. We construe a "violation of this chapter" to mean the seizure of evidence without compliance with the substantive requirements of the ECPA, not a mere unnecessary request for delayed notification.

8

Thus, substantial evidence supports law enforcement's substantive compliance with the notice requirements of section 1546.2, subdivision (a)(1).[3]

*The Second Alleged ECPA Violation – the January 9, 2019 and July 15 Warrants*

Defendant argues the warrants prepared by Speakman did not meet the EPCA's requirement of specifying the date range of information to be searched. However, Speakman's affidavit explained: (1) it was not practicable to specify a date range based on the nature of the devices involved, and (2) he believed that information relevant to defendant's knowledge of prostitution and practice in manipulating women would likely be found outside of the date range for the crimes being investigated.

Defendant does not address the second justification and asserts the first justification "has little credibility" because Valdez had specified a date range in her request for a warrant. However, just because a different officer requested a search warrant for different cell phones and specified a date range for the requested warrant does not invalidate the rationale for not specifying a date range as outlined in Speakman's affidavit. No evidence was presented that contradicted Speakman's concerns that a date range should not be specified. And Speakman's second reason was sufficient for the court to determine that the investigation of defendant's conduct should not be limited to a specific date range. (§ 1546.1, subd. (d)(1).)

---

[3] Defendant also argues the government violated the ECPA by failing to provide defendant the number and types of records discovered after the end of the delayed notice period as required by section 1546.2, subdivision (b)(3). But defendant does not provide a record reference for this contention and we have not independently found any evidence in the record that the government failed to meet this requirement.

9

*The Delay in Applying for the Search Warrants*

Defendant argues the evidence should be suppressed because of the delay between the seizure of the cell phones and law enforcement's applications for the warrants.[4] We disagree.

A seizure that is "lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests." (*United States v. Jacobsen* (1984) 466 U.S. 109, 124). An unreasonable delay between the seizure of property and the police seeking a warrant can violate a defendant's Fourth Amendment rights. (*United States v. Van Leeuwen* (1970) 397 U.S. 249, 252-253.)

Defendant cites several federal cases as persuasive authority that the delays in seeking the warrants in this case were unreasonable. *U.S. v. Pratt* (4th Cir. 2019) 915 F.3d 266 (*Pratt*) is the most analogous to the instant case. In *Pratt*, the Federal Bureau of Investigation suspected the defendant was "running a prostitution ring that included juveniles." (*Id.* at p. 269.) Federal agents seized the defendant's cell phone and waited 31 days before seeking a search warrant. The only justification offered for the delay was that the defendant was believed to have committed crimes in two states, and the officers needed to decide where to seek the warrant. (*Id*. at p. 270.)

The United States Court of Appeals, Fourth Circuit held the delay violated the defendant's possessory interest in his cell phone without sufficient justification. (*Pratt*, *supra*, 915 F.3d at pp. 272-273.) The court explained the decision on where to seek a warrant should not have taken a month; the officers had not justified their lack of diligence. (*Id.* at p. 272.) The court also rejected "the government's alternative argument that it could retain the phone indefinitely because it had independent evidentiary value,

---

[4]     There was an 18-month delay between the May 28, 2017 arrest and the December 26, 2018 Warrant and a seven-day delay between the January 2, 2019 arrest and the January 9, 2019 warrant.

10

like a murder weapon. Only the phone's files had evidentiary value. The agents could have removed or copied incriminating files and returned the phone." (*Id.* at p. 273.) But there is no indication in the *Pratt* opinion that the defendant used the cell phone to commit his crimes. The principal information recovered from the cell phone were 28 images alleged to be child pornography. (*Id.* at p. 270.)

As to the cell phone seized from A., there is nothing in the record to support a conclusion that defendant had any possessory interest in A's cell phone. The cell phone was found in A's possession and there was no evidence defendant owned the cell phone and loaned it to her.

No justification was offered for the delay between the seizure of the cell phones and the acquisition of the warrants. But unlike *Pratt*, the cell phones in this case had evidentiary value independent of the files within them. During defendant's suppression hearing, Detective Barragan testified to the importance of pimps and prostitutes carrying cell phones while they were working. He explained cell phones were the primary communication tool between a pimp and a prostitute and where necessary to communicate information about the amount of money the prostitute has earned, "if there's police in the area . . . whether [the prostitute] needs help." Therefore, the cell phones themselves would be admissible evidence at defendant's trial as the instrumentalities by which defendant pimped his prostitutes. Defendant provides no authority, and we find none, obligating the police to return admissible evidence prior to the disposition of the pending criminal charge for which the evidence was seized.

*The Validity of the Speakman Warrant*

Defendant argues the January 9, 2019 Warrant was invalid because it included incorrect names when it requested to "[p]hysically and forensically search all data which constitutes evidence and instrumentalities of pimping, pandering, human

11

trafficking, and prostitution, including communications referring or relating to this investigation involving [J.L. and M.M.]" We disagree.

Section 1525 states, "A search warrant cannot be issued but upon probable cause, supported by affidavit, naming or describing the person to be searched or searched for, and particularly describing the property, thing, or things and the place to be searched."

Speakman's warrant correctly identified the three cell phones to be searched and described the cell phones by brand, model number, serial number, and color. The statement of probable cause repeatedly referred to defendant as "S-Bell." And the conclusion of the affidavit included the officer's belief "that information obtained from the cellphones will support charges against Brandon Bell." Thus, the search warrant and attached affidavit both correctly identified the property to be searched and identified defendant as the relevant party in the search.

*Penal Code Section 654*

Defendant argues his sentences for counts 2 and 6 (pandering of E. and A., respectively) must be recalled and stayed pursuant to section 654. We disagree.

Defendant accepted a court offer and pleaded guilty to counts 1, 2, 3, 5, and 6. Following the terms of the plea, the court sentenced defendant to four years in state prison on count 1 and, as relevant here, four years on counts 2 and 6 to run concurrently to count 1. Defendant did not object to any portion of the sentence.

California Rule of Court, rule 4.412(b) provides: "By agreeing to a specified term in prison or county jail under section 1170(h) personally and by counsel, a defendant who is sentenced to that term or a shorter one abandons any claim that a component of the sentence violates section 654's prohibition of double punishment, unless that claim is asserted at the time the agreement is recited on the record." In a case

12

procedurally equivalent to this case, our Supreme Court upheld the validity of rule 4.412. (*People v. Hester* (2000) 22 Cal.4th 290, 296.)

Here, defendant agreed to a specified prison term and received that term. Thus, California Rules of Court, rule 4.412 precludes defendant from arguing his sentence violates section 654.

## DISPOSITION

The judgment is affirmed.

IKOLA, J.

WE CONCUR:

BEDSWORTH, ACTING P. J.

FYBEL, J.

13